will hear argument next in In Re. Sears Holdings Corporation, 21-846-201953. Mr. Beebe. Thank you, Your Honor. May it please the Court. My name is Alex Beebe with Larkin Hoffman on behalf of Appellant Cross Appellee Moak Mall Holdings, LLC, which owns and operates a Mall of America. This is not a typical appeal of a bankruptcy lease assignment, which oftentimes is a required part of a sale. Here, 363M of the Bankruptcy Code pertains to sales and does not moot this appeal of an assignment order under 365, or thus deprive subject matter jurisdiction. There are many issues before the Court on this appeal, and in respect of time, I want to focus on just a couple of key issues. First, because a sale is not affected, 363M sale provision does not moot this appeal. Second, because Congress did not make 363M jurisdictional, its remedy limitations were waived and estopped, and this appeal is not moot. Third, as to the cross appeal, because the Bankruptcy Code requires similarity for assignment, the Bankruptcy Court's unchallenged finding of dissimilarity prohibits assignment as the District Court correctly held. Accordingly, we'll be asking the Court that they vacate the District Court's rehearing orders and reinstate and affirm the decision on appeal. In respect of time, if you have any questions, I'd be happy to those before proceeding. I have a question. I think you would acknowledge that an assignment of a lease, it can be a sale. We have cases that say assignment of lease is a sale under 363M. Your argument here is because in two pieces, that there was a designation of the right in the sale order, but the assignment came later, that it's not a sale, right? That's essentially what this comes down to, right? That is one of the potential issues in ways that this Court can rule in our favor, but one of the pieces is that the assignment here was not a sale. We certainly acknowledge it. An assignment can be sold. A lease assignment can be sold, but that's not what happened here. I know, but if these happen on the same day, let's say these two under 363M, right? I don't agree. I think that it would be a different argument, certainly. If it happened on the same day, aren't there multiple cases that would say they're integral to each other, inextricably intertwined, and it triggers 363M, right? Well, I think what we would do is we'd look at what does the sale say, and here the sale order defines a separate independent process in which Transform, as a part of their consideration, accepts the risk that an assignment can be rejected, that what they're purchasing is the designation right. They're not actually purchasing the actual assignment of the lease. They're purchasing the designated right, and the Bankruptcy Court was emphatic on this. Transform agreed before the Bankruptcy Court that this was the case, and we certainly agreed that was the case. The assignment order basically states multiple times, it references, it says it's integral to the asset purchase agreement. It's in connection with the sale. It talks about the protection set forth in the sale order. So, the actual assignment order makes numerous references to the sale order. So, why isn't that, again, you can use it to phrase you want, integral, inextricably intertwined with the sale order? One was going to follow the other. The fact that they didn't occur the same day, why should that have complete significance? Well, I think that's one interpretation of those references. However, the larger context in the assignment order also refers multiple times to this designation process, which actually is what is actually in the sale order and the asset purchase agreement. And so, when you look at that, and Judge Drain, who drafted those orders, was emphatic that this is an outgrowth of the sale. It's not actually part of the sale. It's simply an outgrowth of the sale. And for us to have to have, you know, seven months later, somehow appealed the entire sale order just for this particular assignment, defeats actually the whole purpose of this separate designation process. I don't know if that's true, because one of the purposes is to have finality in these types of situations. And I know this didn't happen here, but Transform, because of the lack of a stay, could have built another store. Once they got the assignment, they were free to do whatever they wanted. They obviously could sublease it. And without a stay, you could have a whole new store there and you're continuing to litigate this issue, right? Isn't that what's behind 363M? Well, that actually ties two separate pieces together. So, 363M pertains to a legal mootness. It's a statutory mootness piece. Whereas, if they filled it with another tenant, we've got an equitable mootness piece, because there's somebody else in there and you're trying to kick them out. And so, there's that piece of it. They're not completely separate. The statutory mootness thing, I think, is rooted in this idea that once people have moved forward, that we don't want to undo other transactions that take place or the things that happen as a result of the sale, right? Yeah, absolutely. And what was part of the sale and allowed this to move forward was that the sale was complete. The sale was complete, which included the designation of rights. And that was complete. They had the right to designate the leases. That was complete. There's nothing undoing that. But there's nothing in that process that says that successful assignment has to take place. The bankruptcy court- Put another store on there. What would we do? What would you do if they put another store on there? Well, if they were moving to put another store on there, within the lease agreement, there's a notice requirement and the mall could have then sought a stay again to, you know, raising the equitable mootness aspect. I didn't appeal the absence of the stay. I went back and looked at the transcript and you were very concerned about this. In fact, even when the bankruptcy judge asked them, are you going to pursue this later? You specifically said, you know, when he said, that's good enough, you said, well, if it's jurisdictional, a court can independently review this, even though they're saying they're not going to raise it. And so it clearly was in your mind that you could be in this exact situation, but you still didn't appeal it. So I'm just curious. That's a very good question. And what happened is, you know, obviously we didn't think that this was part of a sale, but boot and suspenders were worried about this argument being raised. And we didn't want to raise it because almost all of the cases cited for, you know, for the other issue, the cross appeal issues, they address this issue as well. And so we knew that it could be a potential issue. We didn't think it applied because this is an assignment order, clearly a separate assignment order and separate from the sale. But we raised this issue to the bankruptcy court and then the bankruptcy court was emphatic and transformed, agreed with the bankruptcy court repeatedly that this was not an issue, that it was not going to be raised on appeal. And so because everybody agreed that this was not a sale, there was no reason to appeal the lack of a stay because 363M just simply didn't apply. So there was no reason to obtain a sale at that time. Assuming we agree with you that the section 363M applies to the assignment,  with regard to which aspect? With regard to the jurisdictional point. Right. With regard to the jurisdictional point, we acknowledge that this court is unique in that it has applied the jurisdictional label. However, if we peel back the surface of whether or not, of what that jurisdictional label means and the Supreme Court and even this court has looked at, we can't take those at face value. We can't take the use of that term at face value. So if we peel back the surface and look at the history, so West Point states that we've said no ambiguous terms that section 363M is a limit on jurisdiction without much argument into whether or not the statute itself, but simply cites to Gucci. Whereas Gucci in turn also doesn't discuss it in this context of whether or not this is the type of statute that can be waived or stopped. It just simply says where it is invoked, where there is a sale affected and there is no bad faith, what are our options? Are we foreclosed? Is this case smooth? It doesn't actually look at the actual, is this jurisdictional? So in Gucci, it references that we've cited this as a limit on our jurisdiction citing to Salerno. Well, Salerno in turn is kind of the first case in this. And then it's a two, one decision where Salerno doesn't talk about it as being jurisdictional. It talks about whether or not, again, under the circumstances, there was a sale that was being affected that had already closed. And the question was, can we hear this and or is it moot? And it's court determined that because of the statute, it was moot. They weren't actually analyzing the question. You say, when you use the word moot, that has a very specific definition for me. What do you mean by the word? Well, I'm utilizing the second circuits kind of approach to mootness, which is that, are we able to provide relief, the requested relief? If the court is not able to provide requested relief, then the case is moot. And therefore, it has no jurisdiction to hear the case. That's been the second... No, no, no. Usually that's what is confusing me. Usually it's the reverse. So if there's some jurisdictional hurdle that arises, then a case becomes moot, for example, or if we can't, as you put it, remedy whatever the alleged injury is, then it becomes moot. But is this the same thing as the jurisdictional issue, or is this a separate mootness issue that I'm not focused on? Well, so 363M, they're kind of tied together. And this is where I think the terms get conflated, is that 363M limits remedies in certain circumstances, in certain specific circumstances, which then can result in that particular appeal being rendered moot because the court does not have the capacity to render the requested remedy. And therefore, in kind of a loose use of the term, it becomes jurisdictional in nature because it has that jurisdictional implication, that potential jurisdictional implication. In answer to Judge Abrams' question, you went back. You didn't go forward. And I thought that one argument that might be available to you is that ARBO changed our framework with respect to how we determine, since West Point and Gucci, how we determine whether a statutory provision is a jurisdictional provision as opposed to something else. And that as a result of some other subsequent cases, Arnell and others, we can deem whatever we've said in the past, including maybe in West Point and Gucci, as having been abrogated by ARBO. But you didn't make that argument. So maybe I'm missing something, Mr. Beebe. Right. And I didn't feel that it was necessary to go to the point of saying that something was necessarily abrogated because I wanted to focus on the argument that this actually hasn't directly been considered and determined to be actually jurisdictional. It was just a label that was called a label. So when the Second Circuit says it's jurisdictional, you can call it a label or you can call it something else. You could say that it's without analysis. You could say it's with analysis. But we've got to take that very seriously. So we described it as jurisdictional. And I'm interested in the fact that you went backward and you don't think that those are abrogated by ARBO, I take it. And you think that we didn't really mean to say jurisdictional. Well, and I think there is the possibility that I think you could say that it was abrogated as well. I mean, here's the larger piece is that the default is that a statute is not jurisdictional unless Congress says otherwise. And the Supreme Court has made that clear. And I was relying more on the Supreme Court's explanation of this by saying that use of the term jurisdictional should not be afforded any precedence. And you have to look beneath the surface. And so that's what we were trying to do is we'll look beneath the surface and determine has the Second Circuit actually analyzed this and looked at whether or not the statute, whether or not Congress defined this statute as jurisdictional or whether or not it just simply has jurisdictional implications. And so in that sense, I mean, I think both cases apply where the default here is that a statute is non-jurisdictional unless Congress says otherwise. And they didn't say otherwise in the statute, there's no indication otherwise. And in fact, the statute itself implies that there is an appeal because it talks about on an appeal of a sale order. You can't have a sale order if you don't jurisdiction to hear the appeal. Okay. I see that we're out of time. So I can simply address the cross appeal aspects in rebuttal. Why don't you just take a minute on the cross appeal? Go ahead. Okay. So as to the cross appeal, again, we're just looking at statute to interpretation. Statutes have effect. 365B3A sets out a series of requirements in the case of assignment of shopping center leases, and it requires similarity. It requires a finding of similarity. The bankruptcy court found the opposite. They found it undisputed that there was no similarity. Transform did not challenge that finding on appeal. And that should be the end of the story. I mean, Congress added these special protections for shopping centers. They were very considered in that, and they add those protections and that statute must have meaning. Thank you. Mr. Martin. Yes. Craig Martin for Transform. If it may please the court, I do intend to cover the two issues today on jurisdiction and the lease assignment. And I think the court has hit on the key point, Judge Bianco, in your comments about how bankruptcy sales work in the distress that's presented and the risk that's put on the buyer where there's effectively a rapid and chaotic process and a buyer is buying assets with no recourse and doesn't have a real ability to obtain indemnity provisions or meaningful representations and warranties and won't have the actual ability to sue the seller if something goes wrong under the asset purchase agreement. And what Congress did to encourage buyers to bid higher value in bankruptcy cases is in 363 provided that those assets would be purchased free and clear of liabilities and that there would be finality and freedom from litigation as a result of the purchase. Thus, I think as the court has appreciated that the appeal presents an important issue of jurisdiction that will have a significant impact on future bankruptcy sales because it's jurisdiction as a means of reducing their price or even worse, perhaps chilling bidders altogether. So turning to the jurisdictional issue, we have submitted that in this case, you know, you're arguing it's so crystal clear now, but before the bankruptcy court, when banks were specifically asked, you know, counsel for your client that, you know, what's your position on this said, it's not a sale. Until the sublease happens, I think was the answer, you know, it's not sufficient. That doesn't invoke 363M. So do you want to address that? I'm not from a Staple standpoint because it's jurisdictional, obviously Staple would not apply, but I'm just curious what your response is to that. Yes. I think that if you look at the A441-442, the bankruptcy judge's first question was at line 6-7 on 441 and he asked us if it would be rendered moot by the subletting and on 442 at lines 1-18, we responded that we don't have a transaction and we couldn't rely on 360M because of the transaction to the subtenant. So, and this goes a little bit to Judge LaHare's question about what kind of mootness are we talking about and what do we mean by mootness? When I re-reviewed that transcript, I appreciated anew that Judge Drain was really asking about what we call equitable mootness, which is if we had subleased this space, we would then argue to the appellate courts that equitable mootness had to use the property, it would be unjust for you to render a decision. And the 363M mootness is what many courts refer to as statutory mootness, and so I think there was a bit of confusion before the bankruptcy court on that point. Now, obviously the record is clear that we raised this after the district court's initial decision, but we did so because we came to appreciate our mistake of law and wanted to point out to the court that we thought there was a jurisdictional question, especially since as having not prevailed before the district court, it was likely that we would be appealing and we felt it important to present the issue on rehearing so that this court would have a full record on the 363M question. And the district court did review the Gucci case and the West Point Stevens case and ruled that she was in the Second Circuit, that when the Second Circuit used the term jurisdiction to define her appellate power, that it meant it and that she was therefore obligated to vacate her prior decision. Were we right in retrospect given Arbaugh? Yes, I think you were, because Arbaugh was decided in 2006, and it talks about the difference between Congress-conferring jurisdiction and court rules and the like, which actually got picked up by this court in 2014 in the case of Inducraft at 749 F3-107, which was a case that looked at whether a bankruptcy appeal was filed in a timely basis under the appellate rules promulgated by the courts, not promulgated by Congress. And the district court even noted that in a footnote in her decision, that there is a significant distinction when Congress enacts a statute that affects the court's appellate jurisdiction as compared to timeliness rules and other procedural rules that are imposed by the courts. So I would submit, Judge Lahir, that Arbaugh does not in fact vacate Gucci and West Point Stevens, that it is correct because 363M says that the appellate courts may not grant relief if the order is not stayed. And we know factually here that the order was not stayed, and I'll speak to good faith in a moment, but the standards that Congress put forth means that the district court and this court lack the power to grant effective relief. And therefore, we submit that it is correctly analyzed as a jurisdictional statute and that the West Point Stevens discussion of it, which in my reading is relatively thorough, they go through the policy and the history, and they do in fact discuss the nature of 363M and essentially affirmed Gucci and reaffirmed that holding from 10 years earlier. I do want to highlight the... I'm sorry, I just want to make sure that I fully understand what you're saying, particularly when you reference or cite Induprav. You're saying that 363M is not a congressionally mandated provision? No, if that's what you heard, I may have misspoken. What are you saying? 363M was enacted by Congress and therefore limits this court's jurisdiction, and that is because it's not a jurisdiction that is conferred by a certain time and that time is missed. That could be something where the court could still take up jurisdiction. That's the way I read Induprav. So my argument is that under the case law that applies here, including the Supreme Court cases, because Congress enacted 363 and it limits the power of this court to enter and any relief that affects the sale, this court lacks jurisdiction as conferred by Congress. And my follow-up to that then is Arbel seems to require a little bit more of an explicit type of language, jurisdictional language, than appears in 363M. And where is that language here? Well, Your Honor, I submit that the language here prohibits relief. And if you look at mootness case law, it talks about courts not having jurisdiction or issues being moot. And I think that ties back to Article 3 of the Constitution where Congress confers upon courts in cases or controversies jurisdiction. And so here, when Congress said in 363M that this court cannot enter an order affecting a sale, I believe they conveyed and meant that there was no case or controversy regarding the transfer of assets. That argument seems to have been undermined by Arbel. It also seems to have been undermined by subsequent Second Circuit cases. You heard me reference Zarnell. What in the language of 363M, and I've got it in front of me, would tell me that Congress told me or was telling us this is a jurisdictional as opposed to some other bar if you don't satisfy the requirement? Yeah, the language that I rely on, Your Honor, is the inability to, and I'm opening it to give you precise language, that the court may not enter an order that affects the authorization of the entity that purchased the property in good faith, whether or not new of appendency of appeal, unless such stay were stayed pending appeal. So I read the inability to enter relief, even if there is an appeal, unless there's a stay to be saying that the court lacks jurisdiction over an unstayed sale order. I tried to answer Your Honor's questions as the way I read the language. No, no, no. I appreciate it. I'm both fed up and satisfied, but I appreciate that that's what you're relying on. May language. Yes. Okay. And I do think it's important to highlight, if I may have a few more moments to address... Oh, of course. I gave your friend a little bit more time. Thank you. I do want to highlight just on the good faith point that, and I think Judge Bianco read from it, that this is from SPA 73 paragraph three, where all of the findings of and conclusions of law in the sale order are incorporated to and shall apply to the designated lease with full force and effect, and that the buyer is entitled to all of the protections set forth in the sale order. Sale order, of course, had, I think, four different references to good faith findings and also specifically referenced section 363M. So I think not only do the orders taken together demonstrate that this was in fact the type of sale that should benefit from 363M, there were findings of fact that Transform acted in good faith with respect to the sale. And there's a second Gucci case that talks about good faith, and it addresses the real purpose of good faith, which is to ensure that the buyers don't act in such a way as to suppress the price or collude with other bidders to cause negative pricing or negatively affect the sale. It's really a debtor's type protection. Finally, just to touch briefly on the cross appeal. Yes. I think, sorry, Judge Lohier. No, no, no, just please go to the cross appeal. That'd be great. Yeah, just, I want to make one point, and I'm certainly happy to address any questions on it, but the key point from our question here had a provision in it that said after 15 years, a major operating period would expire and that thereafter, the store did not need to be used as a department store. It could be leased, it could be taken dark, and it could be assigned. And the lease provided that that assignment could occur if the party to whom it was assigned had net equity or assets in excess of $50 million. And so we've submitted that based on the evidence here, including the bankruptcy court's reliance on the lease, that the court did in fact conduct the proper analysis under section 365B3, and that the lease is something that was appropriately considered within the terms of the similarity finding, and that that should have been given as it was by the bankruptcy court, a contextual commercial finding consistent with the way in which adequate assurance is analyzed by the bankruptcy courts with respect to the other provisions in section 365B3. So at that point, the lease and its change is significant and was appropriately considered by the bankruptcy court. And for that reason, we submit that should the court grant the appeal on the jurisdictional issues, which we obviously urge the court not to do, but to affirm the that the court should either reverse and render a decision in Transformance FAMER based on Judge Drain's reasoning or remand it to the district court with instructions for her to affirm Judge Drain's decision from the bankruptcy court trial. It's just on the credal issue. Your view, I think, is it makes no sense to, if we were to agree with you on the cross appeal, it makes no sense to have Judge McMahon just do a redo. We've got enough on this record. She's got enough on this record. Is that correct? Yes, and I think your Honor said in a prior panel that you can affirm for different reasons. I've had bankruptcy appeals where, in setting, not in this circuit, but in the Third Circuit, where in a situation like this, the circuit court is comfortable between the bankruptcy court's decision and the district court's decision that the record is appropriately developed, that they can render a final decision and not cause further process in the very busy courts of the Southern District of New York and out in White Plains where the bankruptcy court here sits. Okay, all right. I just have one more question. If you do get to the cross appeal, can you just address very briefly the issue of the inequity and whether or not there's a basis for that? Can you address that? Yes, I'd be happy to. To rely on financial statements, even though I'm saying I don't believe I can accept the financial statements, and then, correct me if I'm wrong, I think it came down to the bankruptcy court. This is the finding that would support the $50 million. I cannot believe that third party lenders would provide the level of financing that they have to transform without at least that level of solvency. Is that a sufficient finding? Correct me if I'm wrong, I think that's the finding that supports the $50 million, and if it is, is that enough? Yes, I think it is enough, and the reason why I think it's enough is because, as you mentioned, we did submit what's called an adequate protection package. This is quite normal in a 363 sale case to provide landlords with a financial package, and that was in the confidential supplemental appellate record. The documents make no representation as to the accuracy, the completeness, or the reasonableness of the information. I'm certainly not an expert in this, but that wouldn't seem like a type of financial statements that you could rely on, and that's why the bankruptcy court was skeptical of it. We argued to the bankruptcy court that that proved that we had $250 million in value because that's what is in those financial statements, and he did not accept that. What he did instead is, having presided over the case, including the sale process and other issues that involve transform, who paid over a billion dollars for these assets, and he knew that to be able to do that, they had borrowed certain amounts of money. I think from his knowledge and experience of the case, he concluded that while he would not find specifically what the value was, whether it was 50 or 75 or 250, but that he concluded that that provision, the $50 million provision, was satisfied based on his knowledge of the case and presiding over both the trial and other aspects of the bankruptcy case, which is quite normal for bankruptcy judges to have a great deal of knowledge on a specific situation. That's why we've submitted that. I'm sorry if you wanted to interject there. I was just going to add that that's why we've submitted that that's a factual finding. I know we've talked in the briefing about de novo and abuse of discretion. On that finding, we submit that it's not a de novo review if you get there, but that it should be reviewed for abuse of discretion. That's all I have on that. If there are no further questions, I'll be happy to pass the podium. Mr. Beattie, you've got two minutes for rebuttal. Thank you. I'm going to just quickly cover several points, unless your honors have follow-up questions. With regard to the legal versus equitable issue, that was thoroughly discussed before the bankruptcy court in the state hearing. I made a point of making it very clear that what we were concerned about was the legal mootness, the effect of 363M, and that was very clear. The cases that were presented on the issues that are now before us on cross appeal, those cases also discussed 363M. It was before everybody, and the court was clarified on that, and there was no distinction made from Transforms Council concerning about that. Yes, the judge did start and was originally concerned with the equitable mootness. Was there another tenant that was going in there? We clarified with the court that we were actually concerned about the potential statutory mootness issue. As to Inducraft, I think Inducraft is a very apt case to look at. In Inducraft, we're looking at a rule, and I think that a rule is more similar to a case, a court interpretation is more similar to a rule than it is to what's actually in the statute. The statute itself explicitly implies that there is an appeal because it starts out with the reversal or modification on appeal. It doesn't say anything about removing jurisdiction. It just simply says that there may be remedy limitations. If those remedy limitations are waived, then we don't even reach the mootness issue. As to the cross appeal going to the cross which says that any assignment must comply with the terms of the lease, and so that's already addressed. Subparagraph A, which is the similarity requirement, must mean something different. It has to mean something more. The general requirements of adequate assurance of compliance with the lease cannot swallow the specific statutory requirements defined in the statute. I see I'm out of time, so I'm just going to go ahead and leave the other issues unless you have further follow-up questions. All right, thank you. Thank you. Thank you very much. We'll reserve decision. That concludes the oral arguments for today, and I'll ask the clerk to adjourn court. Court is adjourned.